Mrs. Franklin Shops of Philadelphia, Inc. v. Commissioner.
Mrs. Franklin Shops of Philadelphia v. Commissioner
Docket No. 112575.
United States Tax Court
1944 Tax Ct. Memo LEXIS 275; 3 T.C.M. (CCH) 401; T.C.M. (RIA) 44135; April 27, 1944
*275 Allen S. Olmstead 2nd, Esq., for the petitioner. Myron S. Winer, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax against the petitioner for the fiscal years ended August 31, 1939, and August 31, 1940, in the amounts of $317.29 and $584.25. The only issue is whether the petitioner was entitled to deduct as business expenses the amounts of $2,475 and $3,975, paid in the respective taxable years pursuant to an arrangement respecting the use of the words "Mrs. Franklin" in its corporate name. Findings of Fact A portion of the facts have been stipulated and are found as stipulated. The petitioner is a Pennsylvania corporation, and has its principal place of business in Philadelphia. It filed its income tax returns for the fiscal years ended August 31, 1939, and August 31, 1940, with the Collector in that city. Ellen J. Franklin, wife of William B. Franklin, was born in 1875, and has been listed in the Philadelphia Social Register since 1913. In 1915 she began operating the business of designing and manufacturing women's hand-knitted sweaters and selling them at retail. The business was operated *276 from her residence until 1917. In that year she opened a retail shop, known as The Sweater Shop, at 17th and Sansom Streets, in Philadelphia. In July 1920, she purchased the premises at 258 South 17th Street, Philadelphia, and moved the business to that location. The business was conducted as a sole proprietorship until June 1921, when she organized a Pennsylania corporation under the name of The Sweater Shop and transferred to it all the assets of the sweater business, including the real estate. For such assets, she received all of the corporation's authorized capital stock of 300 shares, of a par value of $100 each, except two shares issued to qualify directors. Upon organization of the corporation, she became president and one of the directors. At all times material herein she has been president of the corporation and in control of it through her stock ownership. On motion of Mrs. Franklin, the directors of the corporation, on February 27, 1923, and the stockholders, on March 1, 1923, voted to change the name of the corporation from The Sweater Shop to Mrs. Franklin, Incorporated. Thereafter on March 19, 1923, the Secretary of State of the Commonwealth of Pennsylvania issued a *277 certificate effecting the proposed change of name. Since then there has been no further change in the corporate name. In 1925 Mrs. Franklin personally purchased the premises at 260 South 17th Street, Philadelphia, and the shop then operated at 258 South 17th Street by Mrs. Franklin, Incorporated, was enlarged to occupy both premises. In 1926 Mrs. Franklin conveyed the premises at 260 South 17th Street to the corporation. In 1927 Mrs. Franklin, Incorporated, opened a shop on 53rd Street, in New York City, and in April 1932, it opened another shop in Haverford, Pennsylvania. Although women's hand-knitted sweaters constituted the principal product of the business originally begun by Mrs. Franklin, she subsequently developed the idea of women's hand-knitted dresses, which became popular. Because of her ideas as to color and her ability as an interpreter of fashion trends, and as a designer of women's hand-knitted clothing, she became widely recognized in her field. She attended the opening of each new shop of Mrs. Franklin, Incorporated, and also attended their semi-annual and annual fashion shows. She was personally known to a substantial number of the customers of the Philadelphia *278 and the Haverford shops, and a good portion of them relied on her personal taste and judgment in making their purchases. Fashion articles in newspapers and fashion magazines stressed her personal taste and her ability as a designer. Mrs. Franklin, Incorporated, also stressed these in its advertising. In 1938 the corporation operated a factory in Philadelphia for the manufacture of women's knitted dresses and accessories. It was not only selling knitted products, but also dresses, hats fur-trimmed coats and accessories which were not knitted. During the summer of 1938, and in addition to the three shops mentioned above, it operated a summer shop in Bar Harbor, Maine, and one in Watch Hill, Rhode Island. It also conducted a special exhibit and sale of clothing in York Harbor, Maine, during August of that summer. Operating losses were sustained, and by August of 1938 Mrs. Franklin, Incorporated, did not have sufficient credit to purchase the needed fall merchandise. It had exceeded its bank credit and was in default in the payment of interest due on a mortgage for $108,000. The taxes on its 17th Street properties were delinquent. It owed about $14,000 to merchandise creditors for summer *279 merchandise and about $5,000 to other creditors. It was also obligated under a number of leases. At that same time, however, a total of $21,911.53 was due and owing to it by Mrs. Franklin personally and certain members of her family, of which amount $17,649.32 was owing by her. The $21,911.53 was not immediately collectible, because these debtors were financially unable to make payment. In that situation, Francis H. Bohlen, Jr., a son-in-law of Mrs. Franklin, and a director of and counsel for Mrs. Franklin, Incorporated, since 1923, and Eli H. Gruber, secretary and manager of the corporation, had a number of conferences with its creditors. During these conferences a "plan of readjustment" was evolved which provided for the formation of a new corporation, with new cash capital and the words "Mrs. Franklin" as part of its corporate name. The plan provided that the new corporation would take over the Philadelphia and Haverford shops of Mrs. Franklin, Incorporated, together with certain of its assets. The new corporation was to buy (1) $8,000 of the unpledged accounts receivable of Mrs. Franklin, Incorporated, at a discount of 10 percent; (2) the furnishings and fixtures in the Philadelphia *280 and Haverford shops and sufficient of the office equipment needed for its purposes, at the book value thereof as of September 1, 1938; and (3) certain salable merchandise to the amount of approximately $5,000, to be selected by the new corporation. In consideration for such assets the new corporation was to issue certain shares of its second preferred stock and common stock at stated values and pay cash in such additional amount as would be necessary. The stock was to be placed with an escrow agent, who would receive the dividends thereon and make distribution to creditors until certain claims had been paid. Under the plan the new corporation was to pay to merchandise creditors the amounts due them for fall merchandise delivered to or ordered by Mrs. Franklin, Incorporated, but was not to be liable for any other merchandise delivered to or ordered by that corporation. However, the new corporation was not to declare any dividends on its common stock prior to the time the merchandise creditors of Mrs. Franklin, Incorporated, should be paid in full for merchandise other than fall merchandise, and until the interest had been paid in full on the $108,000 mortgage. Provision was also made *281 for consignment to the new corporation from time to time by Mrs. Franklin, Incorporated, of such salable merchandise as was not required by it at its New York City shop, for sale by the new corporation so as to enable Mrs. Franklin, Incorporated, to raise additional cash. Mrs. Franklin, Incorporated, was to lease to the new corporation, for a period of one year, so much of its South 17th Street premises as the new corporation might require for office space and work rooms, at a rental of $150 per month, plus 4 1/2 percent of the sales of the new corporation's Philadelphia shop. excluding sales below cost and income from alterations. The lease was to be assigned by Mrs. Franklin, Incorporated, as additional collateral for its mortgage indebtedness. Other provisions of the plan related to the extension of time for payment by Mrs. Franklin, Incorporated, of its indebtedness and the application to be made by it of cash becoming available for the payment of its outstanding indebtedness. In order to provide the new corporation with cash required for beginning business and carrying out the provisions of the plan relating to it, Francis H. Bohlen had arranged to subscribe $5,000 for stock *282 in the new corporation and had authorization from his mother to subscribe a like amount for her. Eli H. Gruber also was arranging to make a subscription of a like amount. During the latter part of August 1938, application was made to the Secretary of State of the Commonwealth of Pennsylvania for a charter for the new corporation, with the name Mrs. Franklin Shops, Inc. Before issuance of a charter, the Secretary of State required that the name of the place of business of the proposed corporation, be inserted in its corporate name to avoid confusion with the name of the existing corporation, Mrs. Franklin, Incorporated, and that the consent of the latter corporation to the use of the proposed name be filed. On August 27, 1938, there was mailed to the Secretary of State the following consent: "Philadelphia, Pa.
August 26, 1938. "Department of State, Harrisburg, Pennsylvania. "Dear Sirs: "The undersigned, Mrs. Franklin, Incorporated, a Pennsylvania corporation, hereby consents to the use of the name Mrs. Franklin Shops of Philadelphia, Inc. by a proposed Pennsylvania corporation for which application for a certificate of incorporation is to be made to you on Monday, August 29th, *283 1938. "Mrs. Franklin, Incorporated, By (Sgd) Ellen J. Franklin President Attest: (Corporate Seal) (Sgd) Eli H. Gruber Secretary" No formal action was taken with respect to the matter by either the directors or stockholders of Mrs. Franklin, Incorporated. On August 29, 1938, the charter was granted for the new corporation, which is the petitioner herein. Its authorized capital consisted of 300 shares of first preferred no par value stock, with $6 per annum cumulative dividends, 300 shares of second preferred no par value stock, with $6 per annum non-cumulative dividends, and 2,500 shares of no par value common stock. On August 29, 1938, the board of directors of Mrs. Franklin, Incorporated, consisting of Mrs. Franklin, William B. Franklin, Jr., and Francis H. Bohlen, Jr., adopted a resolution authorizing Bohlen and Gruber to put through the plan of readjustment which had been worked out with the creditors. Mrs. Franklin stated that her attempts to obtain money to make a payment on her indebtedness to the corporation had been unsuccessful; that she could sell a property she had at York Harbor to Bohlen for $5,000, and that she was willing to sell and he was willing to buy at that *284 price only on condition that such amount be accepted by the corporation in full settlement of the $21,911,53 indebtedness then owing to it by her and members of her family. Since Mrs. Franklin, Incorporated, was in need of $5,000 to carry out the plan with creditors, the directors voted to accept the payment of the $5,000 on the terms proposed, unless objection be raised by the creditors. On the next day, August 30, 1938, the incorporators of the petitioner, Eli Gruber, Bohlen and his wife, Sidney F. Bohlen, held a meeting, at which they elected themselves directors of petitioner; and on the same day, at a meeting of the directors, Mrs. Bohlen was elected president, Bohlen, vice president and assistant secretary, and Gruber, secretary and treasurer. On either August 29 or August 30, 1938, Mrs. Franklin, for the first time, requested payment by petitioner for the use of the name "Mrs. Franklin" in the petitioner's corporate name, asking that she be paid $75 per week for life. She stated that the reason she was then making the request was that she had just been advised by an acquaintance, a retired business man, that she had the right to require payment therefor. Bohlen declined *285 to enter into such an agreement, on the ground that the petitioner had not begun business, that its future was uncertain, and that an obligation to pay $75 per week might not only impair, but extinguish its capital, if it should be unsuccessful. However, an alternative oral agreement was reached. In that connection the following resolution was adopted by petitioner's directors on August 30, 1938: "RESOLVED that in consideration of the permission of Ellen J. Franklin to this company for the use of the name "Mrs. Franklin" in the corporate name of this company, there shall be issued to the said Ellen J. Franklin 200 common shares of this company to be carried on the books of this company at a value of $200.00 for goodwill, and that in further consideration of said consent of Ellen J. Franklin, this company shall pay to her from and after October 1, 1938, the sum of $75.00 per week, less such salary, if any, as she may receive from Mrs. Franklin, Incorporated. Said weekly sum to be subject to review and ratification at the annual meeting of the stockholders of this company to be held on the first Wednesday in October in each year, it being understood that the amount of said weekly payment *286 shall not be increased but may be decreased in future years depending upon the earnings of this company and the amount of its necessary working capital." At the same meeting, the directors also authorized the issuance of first preferred stock at $96 per share, second preferred stock at $98 per share, and common stock at $1 per share. Units of first preferred and common stock were to be issued for the cash capital paid in, while second preferred and common stock were to be issued for the assets to be received from Mrs. Franklin, Incorporated. On September 3, 1938, a formal agreement was entered into by Mrs. Franklin, Incorporated, its creditors and the petitioner, as a further step in effecting the plan of readjustment. This agreement contained no reference to the arrangement between petitioner and Mrs. Franklin respecting payments to her for the use of her name, but did provide that upon the payment by Mrs. Franklin of $5,000 to Mrs. Franklin, Incorporated, the latter might release her and members of her family from the payment of the $21,911.53 indebtedness owing by them to it. On September 9, 1938, the petitioner issued to Mrs. Franklin, Incorporated, 162 shares of its second *287 preferred stock and 500 shares of its common as part payment for assets valued at $16,376 acquired from that corporation. In pursuance of the arrangement respecting the use of her name, the petitioner issued 200 shares of its common stock to Mrs. Franklin on October 27, 1938, and debited a good will account on its books with $200. In addition to the foregoing amounts of its stock, the petitioner, by the end of January 1939, had issued a total of 250 shares of first preferred stock, for $24,000, and 1,250 shares of common, for $1,250, to six persons, including its three directors. Following the transfer of part of its assets to the petitioner, Mrs. Franklin, Incorporated, continued to operate its shop in New York City and its factory in Philadelphia until December 15, 1938. During that time it sold to petitioner, at wholesale, its requirements of hand-knitted and machine-made dresses. Since December 15, 1938, the petitioner, in addition to its sales activities, has engaged in the manufacture of women's hand-knitted dresses and accessories. At a meeting of the petitioner's stockholders on October 18, 1939, Gruber presented the audit report of the petitioner's operations for the fiscal *288 year ended August 31, 1939, showing a new profit for the year in excess of $10,000, and an earned surplus in excess of $6,500 after payment of dividends on all classes of its stock and after writing off the good will account of $200. The following resolution was adopted at the meeting: "RESOLVED, That until the next annual meeting of the stockholders Ellen J. Franklin be continued to be paid $75.00 for the use of her name, provided that there be deducted therefrom the sum of $5.00 per week which shall be applied to her account owing to the Company until said account shall be fully paid." During or about September 1938, Mrs. Franklin went to South Carolina, where she has since continued to reside. Mrs. Franklin, Incorporated, paid Mrs. Franklin a salary of $1,050 for the period October 1, 1938, to August 31, 1939, but did not pay her any salary for the period September 1, 1939, to August 31, 1940. In pursuance of its arrangement with Mrs. Franklin respecting the use of her name, the petitioner paid her $2,475 and $3,975 during the taxable years ended August 31, 1939 and August 31, 1940, respectively. In its income tax returns for those years, the petitioner deducted the said amounts, *289 as business expenses. In determining the deficiencies involved herein, the respondent disallowed the deductions. Opinion It is the contention of the petitioner that Mrs. Franklin, as an individual, had the legal right to license the use of her name regardless of any rights of Mrs. Franklin, Incorporated, therein, or any rights which petitioner may have acquired from Mrs. Franklin, Incorporated; that Mrs. Franklin did individually license the use of her name to petitioner and that the payments made by petitioner therefor were as to petitioner ordinary and necessary expenses within the meaning of section 23 (a) of the Internal Revenue Code. It is the claim of the respondent that the transactions whereby petitioner acquired its business and assets and rights in and to the name "Mrs. Franklin" were so connected and interrelated that for the purposes here they must be regarded as one transaction, and that the payments in issue in fact constituted a payment for good will represented by or inherent in the name "Mrs. Franklin". In the alternative, it is contended that the petitioner had already acquired from Mrs. Franklin, Incorporated, full and complete rights to the use of the name "Mrs. *290 Franklin", that there was no consideration for the later agreement with Mrs. Franklin individually, and that the payments to her were in reality gifts. In determining the issue here, we find it unnecessary to enter into a discussion of the right of Mrs. Franklin personally to demand payment of the petitioner for the use of her name, or the contention of the respondent that all dealings of the petitioner in perfecting its organization with Mrs. Franklin, Incorporated, and with Mrs. Franklin personally are to be treated as a single transaction. The facts show that during the prior operations of Mrs. Franklin individually and the operations of Mrs. Franklin, Incorporated, the name "Mrs. Franklin" had acquired substantial value in the business in which the petitioner was about to enter. The evidence indicates that it was very important, if not absolutely necessary, to petitioner's success that it put itself in position to enjoy the benefits which would flow from the use of that name, and to that end it entered into agreements with both Mrs. Franklin, Incorporated, and Mrs. Franklin, and regardless of the ultimate legal rights of Mrs. Franklin, Incorporated, or of Mrs. Franklin personally *291 to contract for the use of the name "Mrs. Franklin" in the business here, certainly Mrs. Franklin made her demands on the petitioner under claim of right, and the demands so made were accepted by the petitioner as the basis of the transaction consummated. As for the petitioner, we think it properly described the nature and character of the rights acquired in and to the name "Mrs. Franklin" in the resolution adopted by its directors on August 30, 1938, when it directed that the payment then made under its agreement with Mrs. Franklin, namely, the 200 shares of its common stock, be carried on its books as a payment for good will. The fact that other payments to be made in cash were to be made over a period of years and were subject to certain contingencies does not, in our opinion, affect or change the character of the rights acquired or of the payments therefor. The subsequent payments were no less payments for good will than the 200 shares of common stock issued when the agreement was reached. Being of the opinion that the payments in question were payments made in the acquisition of good will, the claim of the petitioner that they constituted ordinary and necessary expenses within *292 the meaning of section 23 (a), supra, is denied. Decision will be entered for the respondent.